UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SURYA RAVI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TETRAPHASE PHARMACEUTICALS, INC, L. PATRICK GAGE, GAREN BOHLIN, STEVEN BOYD, JEFFREY A. CHODAKEWITZ, JOHN G. FREUND, GERRI HENWOOD, GUY MACDONALD, KEITH MAHER, and NANCY J. WYSENSKI,<br><br>　　　　Defendants. | Case No.:<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**BACKGROUND**

1.　This action concerns a proposed transaction announced on March 16, 2020 pursuant to which Tetraphase Pharmaceuticals, Inc. ("Tetraphase" or "the Company") will be acquired by AcelRx Pharmaceuticals, Inc. ("AcelRx").

2.　On March 15, 2020, Tetraphase's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Tetraphase shareholders will receive 0.6303 shares of AcelRx

common stock and one contingent value right ("CVR")[1] for each share of Tetraphase common stock they own ("Merger Consideration"). Although the number of shares of AcelRx common stock that Tetraphase shareholders will receive is fixed, the market value of the Merger Consideration will fluctuate with the market price of AcelRx common stock and will not be known at the time Tetraphase shareholders vote to approve the Merger Agreement. Based on the closing price of AcelRx common stock on the NASDAQ on March 13, 2020, the last trading day before the public announcement of the parties entering into the Merger Agreement, the Merger Consideration represented approximately $0.70 in value in the form of AcelRx common stock for each share of Tetraphase common stock.

3. On April 6, 2020, in order to convince Tetraphase's stockholders to vote in favor of the Proposed Transaction, Defendants filed a materially incomplete and misleading S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") and sent same to stockholders of Tetraphase.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, Plaintiff alleges herein that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

5. In addition, a special meeting of Tetraphase's stockholders will be held to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Stockholder Vote so Tetraphase stockholders can properly exercise their corporate voting rights

---

[1] CVRs entitle the holders to receive aggregate payments of up to $12.5 million for the achievement of future XERAVA™ net sales milestones starting in 2021.

and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7. This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District. Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Tetraphase common stock.

10. Defendant Tetraphase is a company organized under the laws of Delaware and a party to the Merger Agreement. Tetraphase common stock is traded on the NASDAQ under the ticker symbol "TTPH."

11. Defendant L. Patrick Gage is Chairman of the Board of the Company.

12. Defendant Garen Bohlin is a director of the Company.

13. Defendant Steven Boyd is a director of the Company.

14. Defendant Jeffrey A. Chodakewitz is a director of the Company.

15. Defendant John G. Freund is a director of the Company.

16. Defendant Gerri Henwood is a director of the Company.

17. Defendant Guy Macdonald is a director of the Company.

18. Defendant Keith Maher is a director of the Company.

19. Defendant Nancy J. Wysenski is a director of the Company.

**FACTS**

20. Tetraphase is a biopharmaceutical company using its proprietary chemistry technology to develop and commercialize novel tetracyclines for serious and life-threatening conditions, including bacterial infections caused by many multidrug-resistant, or MDR, bacteria. The company's commercial product, XERAVA™ (eravacycline), a fully synthetic fluorocycline, is an intravenous, or IV, antibiotic that is approved for use as a first-line empiric monotherapy for the treatment of MDR infections, including those found in complicated intra-abdominal infections, or cIAI. The Tetraphase pipeline also includes TP-271 IV and Oral, and TP-6076 IV only, which are Phase 2 ready, and TP-2846, which is in preclinical testing for acute myeloid leukemia.

21. AcelRx is a specialty pharmaceutical company focused on the development and commercialization of innovative therapies for use in healthcare institutions. AcelRx's proprietary, non-invasive sublingual formulation technology delivers sufentanil with consistent pharmacokinetic profiles. AcelRx has one approved product in the U.S., DSUVIA® (sufentanil sublingual tablet, 30 mcg), known as DZUVEO™ in Europe, indicated for the management of acute pain severe enough to require an opioid analgesic for adult patients in certified medically supervised healthcare settings,

and one product candidate, Zalviso® (sufentanil sublingual tablet system, SST system, 15 mcg), an investigational product in the U.S., is being developed as an innovatively designed patient-controlled analgesia (PCA) system for reduction of moderate-to-severe acute pain in medically supervised settings. DZUVEO and Zalviso are both approved products in Europe.

22. On March 15, 2020, Tetraphase's Board caused the Company to enter into the Merger Agreement.

23. The Merger Agreement provides that Tetraphase has agreed with AcelRx, a Delaware corporation, and Consolidation Merger Sub, Inc., a Delaware corporation and indirectly wholly-owned subsidiary of AcelRx ("Merger Sub"). Under the Merger Agreement, among other things and subject to terms and conditions set forth therein, Merger Sub will be merged with and into the Company, with the Company surviving as a wholly-owned indirect subsidiary of AcelRx (the "Merger").

24. At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> each share of Company Common Stock outstanding immediately prior to the Effective Time (other than any Dissenting Company Shares) shall be converted into the right to receive (A) a number of shares of Parent Common Stock equal to the Exchange Ratio and (B) one contingent value right per share (a "**CVR**") representing the right to receive the consideration set forth in the CVR Agreement (together with the Exchange Ratio, the "**Merger Consideration**").

25. The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

26. It is therefore imperative that the Company common stockholders receive the material information that Defendants have omitted from the Registration Statement so that they can meaningfully assess whether the Proposed Transaction is in their best interests prior to the vote.

27. Section 4.4 of the Merger Agreement provides for a "no solicitation" clause that prevents Tetraphase from soliciting alternative proposals and constrains its ability to negotiate with potential buyers:

> **(b)** The Company shall (and shall cause the other Tetraphase Companies to) and shall direct their Representatives to immediately cease any solicitation, discussions or negotiations with any Persons that may be ongoing as of the date of this Agreement with respect to an Acquisition Proposal. Except as permitted by this Section 4.4 or Section 5.2, until the Specified Time the Company shall not, and shall cause each other Tetraphase Company and cause its and their Representatives not to, directly or indirectly, (i) solicit, initiate or knowingly facilitate or knowingly encourage any inquiries or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, an Acquisition Proposal, (ii) engage in, continue or otherwise participate in any discussions or negotiations regarding, or furnish to any other Person any non-public information in connection with an Acquisition Proposal or any proposal or offer that would reasonably be expected to lead to an Acquisition Proposal, or (iii) adopt any resolution for the purpose of exempting any Person (other than Parent and its Subsidiaries) from the restriction on "business combinations" or any similar provision contained in applicable Anti-Takeover Law or the Company's organizational or other governing documents.

28. In addition, Section 8.3 of the Merger Agreement requires Tetraphase to pay a $810,000.00 "termination fee" to AcelRx in the event this agreement is terminated by Tetraphase and improperly constrains the Company from obtaining a superior offer.

29. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

30. As alleged herein, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

31. First, the Registration Statement omits material information regarding Tetraphase's, AcelRx's, and the pro forma combined company's financial projections.

32. With respect to Tetraphase's financial projections, the Registration Statement fails to disclose all line items used to calculate EBIT and unlevered free cash flow. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

33. With respect to AcelRx's financial projections, the Registration Statement fails to disclose all line items used to calculate EBIT and unlevered free cash flow. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

34. With respect to pro forma combined company's financial projections, the Registration Statement fails to disclose all line items used to calculate EBIT and unlevered free cash flow. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

35. The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisor rendered in support of any fairness opinion.

36. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor Janney Montgomery Scott LLC ("Janney") in connection with the Proposed Transaction.

37. With respect to Janney's *Implied Equity Value of the Merger Consideration*, the Registration Statement fails to disclose (i) the Company's weighted average cost of capital ("WACC") and (ii) the individual inputs and assumptions underlying the range of discount rates of 17.6% to 21.6%. This information must be disclosed to make the Registration Statement not materially misleading to Tetraphase stockholders and provide stockholders with full and relevant information in considering how to vote.

38. With respect to Janney's *Standalone Discounted Cash Flow Analysis*, the Registration Statement fails to disclose (i) the Company's terminal value, (ii) Janney's full basis for

applying an Enterprise Value/Revenue exit multiple range of 2.25x to 2.75x, (iii) the individual inputs and assumptions underlying the range of discount rates of 17.6% to 21.6%, and (iv) net debt/cash . This information must be disclosed to make the Registration Statement not materially misleading to Tetraphase stockholders and provide stockholders with full and relevant information in considering how to vote.

39. With respect to Janney's *Pro Forma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose (i) the expected operational synergies, (ii) terminal value, (iii) Janney's full basis for applying an Enterprise Value/Revenue exit multiple range of 2.25x to 2.75x, (iv) the individual inputs and assumptions underlying the range of discount rates of 14.7% to 18.7%, and (v) net debt/cash . This information must be disclosed to make the Registration Statement not materially misleading to Tetraphase stockholders and provide stockholders with full and relevant information in considering how to vote.

40. With respect to Janney's *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the transactions observed by Janney in the analyses. This information must be disclosed to make the Registration Statement not materially misleading to Tetraphase stockholders and provide stockholders with full and relevant information in considering how to vote.

41. With respect to Janney's *Premium Paid Analysis*, the Proxy fails to disclose the transactions observed by Janney in the analysis or the premiums paid in those transactions. This information must be disclosed to make the Proxy not materially misleading to Tetraphase stockholders.

42. With respect to Janney's *Selected Public Companies Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by

Janney in the analyses. This information must be disclosed to make the Registration Statement not materially misleading to Tetraphase stockholders and provide stockholders with full and relevant information in considering how to vote.

43. Third, the Registrations Statement omits material information regarding the retention of Tetraphase's additional financial advisors "Financial Advisor A," Financial Advisor B," and "Financial Advisors C" (the "Additional Financial Adivsors").

44. With respect to the Additional Financial Advisors the Registration Statement fails to disclose (i) the amount of compensation the Additional Financial Advisors have received or will receive in connection with their respective engagements by the Company, (ii) the amount of the Additional Financial Advisors compensation that is contingent upon the consummation of the Proposed Transaction, (iii) whether the Additional Financial Advisors have performed past services for any parties to the Proposed Transaction and/or their affiliates, including the timing and nature of those services and the amount of compensation received for providing such services, and (iv) their identity.

45. Full disclosure of investment banker compensation and all potential conflicts is material information stockholders of Tetraphase are entitled to receive in deciding what weight to place on the opinions and roles played by the investment banks in the Proposed Transaction.

46. Fourth, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" ("DADW") provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

47. The Registration Statement provides that the Company entered into confidentiality agreements with a number of potentially interested parties. However, the terms of these

confidentiality agreements, including whether they contain standstill and/or DADW provisions, are undisclosed. Without further information regarding the terms of these agreements, and whether they contained standstill and/or DADW provisions, including whether those provisions have fallen away up or are still in effect, Company stockholders are unable to properly evaluate the ability of these parties that earlier expressed interest in acquiring the Company to offer them a better deal. If the confidentiality agreements contained standstill provisions – and especially if they contained DADW provisions – then those counterparties have been and will be hindered or even completely precluded from making a superior proposal. The extent of such hindrances is material information of which the stockholders must be informed before voting on the Proposed Transaction. The omission of this information renders the descriptions of the confidentiality agreements the Company entered into materially incomplete and misleading, as the failure to disclose the existence of standstill and/or DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements could make a superior proposal.

48. The omission of the above-referenced material information renders the Registration Statement false and misleading.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act,

requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

52.     Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

53.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders as required.

54.     The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Registration Statement. Defendants were also negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.


55. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF SECTION 20(a) OF THE EXCHANGE ACT)

56. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

60. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63. Plaintiff has no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.	Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.	Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.	Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.	Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 20, 2020

**MOORE KUEHN, PLLC**

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*